EUGENE SCALIA, Secretary of
Labor, United States Department of Labor,

   Plaintiff,

   v.

NORTH PROVIDENCE PRIMARY CARE
ASSOCIATES INC., NORTH PROVIDENCE
URGENT CARE, INC., CENTER OF NEW
ENGLAND PRIMARY CARE, INC.,
CENTER OF NEW ENGLAND URGENT
CARE, INC., Dr. ANTHONY FARINA, JR.,
AND BRENDA DELSIGNORE,

   Defendants.

Civil Action No.
1:19–cv–00002–JJM–LDA

## SECRETARY OF LABOR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

This case is fundamentally about Defendants' failure to pay their employees the required overtime premium for hours worked over 40 per week, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA" or "Act"). Defendants North Providence Primary Care Associates, Inc.; North Providence Urgent Care, Inc.; Center of New England Primary Care, Inc.; Center of New England Urgent Care, Inc.; Dr. Anthony Farina, Jr.; and Brenda Delsignore (together, "Defendants"), admitted that from July 2015 to the present they have not paid their employees the required premium for overtime hours worked, unless those overtime hours were authorized by Defendants in advance. There is no genuine dispute that Defendants knew their employees worked overtime hours and failed to properly compensate them for those hours worked. Because that practice violates the FLSA, Plaintiff Secretary of Labor, United States Department of Labor (the "Secretary"), is entitled to judgment as a matter of law on that issue.

1

It is lawful for Defendants to create a rule that seeks to prevent employees from working unauthorized overtime hours. It is also lawful for Defendants to exercise their authority to prevent employees from working unauthorized overtime hours in violation of such a work rule. However, under the FLSA, it is not lawful for Defendants to do what they did in this case, which is to refuse to pay employees the required overtime premium for hours that employees actually worked over 40 per week when Defendants knew that their employees were working those overtime hours.

Defendants also violated the overtime provisions of the FLSA in other ways. There is no genuine dispute that Defendants had a policy and practice of deducting 30 minutes for lunch from employees' hours worked whether or not the employees took a lunch break. When those improper 30-minute deductions are added back into the hours worked by employees, the result is that those employees worked more than 40 hours in a week and Defendants did not pay them the required premium for those overtime hours worked. Further, there is no genuine dispute that Defendants at times failed to combine certain employees' hours worked in a single workweek at two or more of the corporate Defendants' locations. When those employees' hours worked are combined, they worked more than 40 hours in a week and Defendants did not pay them the required premium for those overtime hours. There is also no genuine dispute that Defendants instructed employees to report to work before 8:00 a.m., but did not start paying them until 8:00 a.m. In addition, there is no genuine dispute that the Secretary is entitled to recover liquidated damages on behalf of the affected employees for Defendants' overtime violations.

The Secretary also seeks summary judgment on: (1) the willful nature of Defendants' FLSA violations; (2) the status of Defendants as employers for purposes of the FLSA; and (3)

Defendants' FLSA recordkeeping violations. Finally, the Court should enjoin Defendants from violating the FLSA in the future.

## FACTUAL BACKGROUND

Defendants North Providence Primary Care Associates, Inc. ("NPPC") and Center of New England Primary Care, Inc. ("CNEPC") are corporations, owned by a sole corporate officer, Defendant Dr. Anthony Farina, Jr., who operates, through those corporations, internal medicine facilities that provide physical exams with a focus on chronic medical issues. Sec'y's Statement of Undisputed Material Facts ("SUMF") ¶¶ 1–2, 25. Defendants North Providence Urgent Care, Inc. ("NPUC") and Center of New England Urgent Care, Inc. ("CNEUC") are also owned by a sole corporate officer, Dr. Farina, who operates, through those corporations, walk-in facilities for medical services that have a focus on patients with urgent problems who may or may not have a primary care doctor. SUMF ¶¶ 1–2, 26.

NPPC and NPUC share the same building at 1830 Mineral Spring Avenue, North Providence, Rhode Island, with the primary care facility located on the second floor and urgent care facility located on the first floor. SUMF ¶ 27. CNEPC and CNEUC operate on the same floor of a building located at 775 Center of New England Boulevard, West Greenwich, Rhode Island, with half of the floor dedicated to primary care and half of it to urgent care. SUMF ¶ 28. NPPC, CNEPC, CNEPC, and CNEUC (the "corporate Defendants") employed and continue to employ a number of categories of employees, including medical secretaries, receptionists, x-ray technicians, medical assistants, and nurses, and certain of those employees work at two or more of the corporate Defendants' locations. SUMF ¶ 72. For purposes of this case, the corporate Defendants are a single enterprise that is covered by the FLSA. SUMF ¶¶ 25–33. Defendants employed the employees at issue in this case. SUMF ¶¶ 1–33.

Defendant Dr. Farina was and is the president and medical director of the corporate Defendants. SUMF ¶ 8. He made decisions regarding the hiring, firing, and supervising of employees, and created all of Defendants' policies and procedures regarding the payment of overtime at all of the corporate Defendants' locations. SUMF ¶¶ 3–11. Dr. Farina had ultimate decision-making authority with respect to the corporate Defendants. SUMF ¶ 9.

Defendant Brenda Delsignore was the practice manager for all of the corporate Defendants. SUMF ¶ 12. She was involved in the hiring, firing and supervising of employees, setting employees' schedules, and enforcing Defendants' practices and procedures for paying employees, including the approval or disapproval of the payment of overtime. SUMF ¶¶ 13–17, 20, 22.

For the period from July 2015 to the present, Defendants admitted that they did not pay employees the overtime premium required by the FLSA for hours worked over 40 per week, unless those overtime hours were authorized in advance by Defendants. SUMF ¶¶ 34–35. This overtime payment practice is apparent on the face of Defendants' own records. SUMF ¶¶ 38–52. During the period between July 20, 2015 and May 2020, Defendants did not discipline employees for working overtime hours that were not authorized by Defendants in advance. SUMF ¶ 37.

Defendants also had a practice of deducting 30 minutes of lunch time from the hours worked by any employee who worked six hours or more in a day whether or not those employees actually took a 30-minute lunch break. SUMF ¶¶ 53–55. This practice is also apparent on Defendants' own records, which show that even when employees punched out for a 30-minute lunch, Defendants deducted an additional 30 minutes from those employees' hours worked for that day. SUMF ¶¶ 55–59. Defendants also required certain employees to report to work at 7:45

a.m. but did not start paying them until 8:00 a.m. SUMF ¶¶ 54, 97. Defendants further had a policy of not paying for any unauthorized hours worked prior to 7:45 a.m. at any of the corporate Defendants' locations. SUMF ¶ 98.

In addition, during the period between July 20, 2015 and the present, Defendants at times did not combine the hours worked by certain employees in a single workweek at more than one of the corporate Defendants' locations, which resulted in those employees not being paid the required premium for overtime hours worked. SUMF ¶¶ 86–95. During this period, the corporate Defendants had no system in place to determine when an employee punched in at different locations and, as a result, worked more than 40 hours in one workweek at more than one of the corporate Defendants' facilities. SUMF ¶ 96.

The corporate Defendants and their facilities were interconnected in a number of ways. In addition to sharing an owner/medical director, managers, and other employees such as doctors, medical secretaries, emergency medical technicians, receptionists, nurses, and x-ray technicians, the corporate Defendants also shared record keeping systems, bookkeeping services, human resources, legal services, accounting services, and billing services. SUMF ¶¶ 2, 12, 29, 72–73. The corporate Defendants purchased supplies centrally, and when employees worked for more than one of the corporate Defendants, the employees' scheduling would occur centrally and supervisors would coordinate their work schedules, which would be approved by Defendants' management. SUMF ¶¶ 77–78. For example, when x-ray technicians worked at both the CNEUC and the NPUC facilities they were supervised by one x-ray technician supervisor, who would perform that supervision for both facilities. SUMF ¶ 79.

With respect to recordkeeping, Defendants failed at times to record the actual hours worked per day and per week by employees. SUMF ¶ 99. As described above, Defendants would

deduct 30 minutes per day from the daily hours worked by employees even though those employees had already clocked out for a 30-minute break. SUMF ¶ 100. Thus, the total hours per day and week that Defendants recorded did not reflect actual hours worked by those employees. SUMF ¶ 101. In addition, Defendants at times incorrectly categorized on their records payments made to employees at their straight-time pay rates for hours worked over 40 hours in a workweek. SUMF ¶¶ 102–03. Certain of Defendants' records show that employees worked overtime hours but the corresponding payments to those employees do not show any payment for overtime hours worked; rather, Defendants' payroll records contain categories called "Other" or "Miscellaneous," which record payments Defendants made to these employees at the employees' straight-time pay rates for hours worked over 40 per week. SUMF ¶¶ 102–03.

Further, Defendants did not keep the required time and payroll records accessible at their places of employment, or at one or more established central recordkeeping offices where such records are customarily maintained, such that they could be made available within 72 hours following a request from the Secretary for such records. SUMF ¶¶ 104–07.

Defendants are not currently in compliance with the FLSA since they still follow their established policy of not paying employees the required overtime premium for hours worked in excess of 40 in a week, unless those overtime hours are approved in advance by Defendants. SUMF ¶ 111. Thus, Defendants' violations of the FLSA are ongoing.

## APPLICABLE STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedures: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera-Rivera v.*

*Medina & Medina, Inc.*, 898 F.3d 77, 87 (1st Cir. 2018). A fact is "material" if it has the

potential to affect the outcome of a claim. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The non-moving

party may defeat the motion by producing sufficient specific facts to establish that there is a

genuine issue of material fact for trial. *Anderson*, 477 U.S. at 250. The Court must "resolve all

reasonable inferences" in favor of the non-moving party. *Rivera-Rivera*, 898 F.3d at 87.

However, the Court must also "ignore conclusory allegations, improbable inferences, and

unsupported speculation." *Id.* (internal citations and quotation marks omitted).

## ARGUMENT[1]

I.     The Secretary is Entitled to Summary Judgment on Defendants' Failure to Pay
       Employees the Required Overtime Premium

    A.     *There is no genuine dispute that Defendants failed to pay employees the required*
       *overtime premium when Defendants did not authorize the overtime hours in advance*

Under the FLSA, to establish an employer's liability for overtime work, the Secretary

must show that the employer employed nonexempt employees "for a workweek longer than forty

hours" and did not compensate those employees for hours worked in excess of 40 per week "at a

rate not less than one and one-half times the regular rate at which [they were] employed." 29

---

[1] There is no genuine dispute that the corporate Defendants are an enterprise covered by
the FLSA, as Defendants have stipulated to that issue. SUMF ¶¶ 30–33. There is also no genuine
dispute that Defendants Dr. Farina and Delsignore are part of that enterprise, as they were or are
engaged in related activities through unified operation or common control for a common
business purpose. *See* 29 U.S.C. §§ 203(r)–(s); SUMF ¶¶ 1–33.

U.S.C. § 207(a)(1); *accord Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013). In addition to showing that employees performed work for which they were not properly compensated, the Secretary must also show the employer had actual or constructive knowledge of that work. *Manning*, 725 F.3d at 43–44. However, such knowledge need not be concurrent with the work performed. *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287–88 (2d Cir. 2008) ("We have never suggested that an employer's knowledge need arise *concurrently* with the performance of overtime, for good reason. The Act's overtime provisions apply to work performed off premises, outside of the employer's view and sometimes at odd hours, where an employer's concurrent knowledge of an employee's labor is not the norm." (emphasis in original)).

In this case, there is no genuine dispute that Defendants had at least constructive knowledge that their employees worked overtime hours and that they did not compensate their employees at one and one-half times the employees' regular rates of pay for those overtime hours worked. Defendants admitted that they have a longstanding policy not to pay employees the FLSA overtime premium for hours worked in excess of 40 in a workweek unless those overtime hours are authorized by Defendants in advance. SUMF ¶¶ 34–35. Defendants' time and payroll records show a number of instances where an employee worked overtime hours and there are handwritten notations on Defendants' records that the overtime hours were not authorized and the overtime premium was not paid by Defendants. SUMF ¶¶ 38–52.

Other of Defendants' records show overtime hours worked by employees and payment for only 40 hours, with a payment category of "Other" or "Miscellaneous" on the payroll records. SUMF ¶¶ 60–71. Those payment categories of "Other" or "Miscellaneous" contain an amount exactly or approximately equal to the employees' overtime hours worked multiplied by

their straight-time rates of pay, with no recorded payment of any overtime premium. SUMF ¶¶ 60–71. When asked about these records during his deposition, Defendant Dr. Farina stated as to one such employee: "If it was unapproved overtime, as agreed to by employee—as agreed to by the employee and as per my policies and procedures—she would not be approved; she would not be paid for any overtime hours that was not approved or authorized." SUMF ¶ 67.[2]

Because it is undisputed that employees in this case performed overtime work for which Defendants did not pay them the required overtime premium under the FLSA, and that Defendants had at least constructive knowledge of that overtime work from their own records, the Secretary is entitled to summary judgment on this aspect of his overtime claim. *See Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1102 (9th Cir. 2020) (affirming district court's grant of summary judgment to the Secretary on issue of liability for willful overtime violations where there was no genuine dispute as to knowledge of the violations by a relatively low-level employee of the employer); *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 153 (2d Cir. 2008) (upholding summary judgment in favor of employee on overtime and liquidated damages); *Pingatore v. Town of Johnston*, No. 11–0685, 2011 WL 6056891, at *6 (D.R.I. Oct. 31, 2011) (Almond, MJ.) (where the nature of the overtime violation, the use of an incorrect regular rate to calculate the overtime premium, was not in dispute, employees were entitled to summary judgment despite the fact that they had agreed to that specific rate), *R. & R. accepted*, No. 11–068–S, 2011 WL 6097979, at *1 (D.R.I. Dec. 6, 2011) (Smith, J.).

---

[2] It is undisputed that Defendants also required certain employees to report to work prior to 8:00 a.m., but did not pay them for any time worked before 8:00 a.m. SUMF ¶¶ 54, 97. And Defendants had another policy that any work performed prior to 7:45 a.m. without prior authorization would not be compensated. SUMF ¶ 98.

The fact that Defendants had a work rule allowing only preauthorized overtime hours to be compensated, and that employees may have agreed to that rule, does not relieve Defendants of their obligation to pay employees the FLSA overtime premium for all hours the employees actually worked over 40 per workweek. The pertinent regulation is clear: "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed." 29 C.F.R. § 785.13. The employer "cannot sit back and accept the benefits without compensating for them," and "[t]he mere promulgation of a rule against such work is not enough." *Id.* "Management has the power to enforce the rule and must make *every effort* to do so." *Id.* (emphasis added).

In *Gotham Registry*, a nurse staffing company had a rule that nurses could not work unauthorized overtime hours. 514 F.3d at 288. The employer in that case claimed it did not "suffer or permit" that overtime work, and only learned of the overtime hours after seeing them on the nurses' time cards. *Id.* at 286–88.[3] The United States Court of Appeals for the Second Circuit rejected the employer's argument in *Gotham Registry*. "In an ordinary employer-employee relationship, management is believed to have ready access to a panoply of practical measures to induce compliance with its formal rule against overtime," and, "[i]n such cases, a presumption arises that an employer who is armed with knowledge has the power to prevent work it does not wish performed." *Gotham Registry*, 514 F.3d at 290. "Where this presumption holds, an employer who knows of an employee's work may be held to suffer or permit that work." *Id.*; *accord Barfield*, 537 F.3d at 136–37, 148, 153 (upholding summary judgment in favor of employee on overtime claim despite employee using three different placement agencies

---

[3] Under the FLSA, "work not requested but suffered or permitted is work time." 29 C.F.R. § 785.11; *see also* 29 U.S.C. § 203(g) (defining "[e]mploy" as including "to suffer or permit to work").

to circumvent a rule against overtime); *U.S. Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 779 (6th Cir. 1995) (noting that "it is the responsibility of management to see that work is not performed if it does not want it to be performed").

 As discussed above, it is undisputed that Defendants here, much like the employer in *Gotham Registry*, have a rule not to pay employees an overtime premium for overtime hours worked unless Defendants authorized those overtime hours in advance. SUMF ¶¶ 34–35. Defendants' mere promulgation of that overtime rule does not relieve them of the requirement to pay their employees the FLSA premium for overtime hours actually worked. Defendants must exercise their control and power to "make every effort" to enforce their overtime rule. 29 C.F.R. § 785.13; *accord Gotham Registry*, 514 F.3d at 291 (the law requires employers "to adopt all possible measures to achieve the desired result").

 In this case, there is no genuine dispute that Defendants failed to make the requisite efforts to enforce their overtime policy. Despite Defendants' knowledge that employees were working overtime hours, SUMF ¶¶ 35–52, 56–59, 61–71, they did not exercise their power to prevent employees from working unauthorized overtime hours, and specifically did not discipline anyone for working unauthorized overtime hours, SUMF ¶ 37. If Defendants "were serious about preventing unauthorized overtime, [they] could discipline [employees] who violate the rule" regarding overtime work. *Gotham Registry*, 514 F.3d at 291. Instead of taking efforts to enforce their overtime work rule, Defendants in this case simply did not pay employees the required premium for overtime hours that Defendants knew their employees worked. That practice is not lawful under the FLSA.[4]

---

[4] Whether employees voluntarily work overtime hours against an employer's policy, or are pressured to do so, is immaterial to the analysis of whether the employer must pay the

The fact that employees may have agreed to Defendants' policy regarding overtime is not material, as any such agreement cannot relieve Defendants of their obligation to properly pay employees the required overtime premium under the FLSA. The Supreme Court of the United States stated long ago: "No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act." *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *accord Gotham Registry*, 514 F.3d at 290 ("the Supreme Court instructs that employees cannot waive the overtime protections granted them in the FLSA without nullifying the Act's purposes and setting aside the legislative goals it wanted effectuated").

In sum, there is no genuine dispute that Defendants here: (1) knew their employees worked overtime hours; (2) failed to pay those employees the required overtime premium under the FLSA; and (3) did not take sufficient steps to enforce their rule seeking to limit overtime work. With respect to this overtime violation, the Secretary is entitled to judgment as a matter of law.[5]

B. *There is no genuine dispute that Defendants deducted 30 minutes from employees' hours worked whether or not employees took a lunch break*

During the period between July 2015 and the present, Defendants have implemented a policy of deducting 30 minutes of lunch time from the daily hours worked by employees whether or not those employees took a lunch break. SUMF ¶¶ 53–54. This practice is evident in a number of instances where employees punched out for a 30-minute lunch break and Defendants deducted

---

employees the required overtime premium under the FLSA. "[O]nce it is established that an employer has knowledge of a worker's overtime activities and that those activities constitute work under the Act, liability does not turn on whether the employee agreed to work overtime voluntarily or under duress." *Gotham Registry*, 514 F.3d at 290.

[5] The Secretary does not seek summary judgment on the amount of overtime compensation Defendants owe their employees, and will establish that amount at trial.

an additional 30 minutes from those employees' time cards. SUMF ¶¶ 55–59. When those improperly deducted 30 minutes are added back into the hours worked by these employees, they worked more than 40 hours in certain workweeks but Defendants failed to pay them the required premium for those overtime hours worked. SUMF ¶¶ 55–59.

Given that there is no genuine dispute that Defendants deducted 30 minutes for lunch from employees' hours worked whether or not they took a lunch break, as a matter of law Defendants failed to compensate those employees for actual hours worked in violation of the FLSA. *See* 29 U.S.C. § 203(g) (defining "[e]mploy" as including "to suffer or permit to work"); 29 C.F.R. § 785.11 (even "work not requested but suffered or permitted is work time").

C. *There is no genuine dispute that Defendants failed to combine hours worked by employees at two or more of the corporate Defendants' locations*

The corporate Defendants share employees across their different locations. SUMF ¶ 72. There is no genuine dispute that certain employees worked at two or more of the corporate Defendants' locations in one workweek and that their total combined hours across all locations exceeded 40 hours per week, yet Defendants did not pay those employees the required overtime premium. SUMF ¶¶ 86–95. Defendants did not have a system in place to determine when an employee working at two or more of the corporate Defendants' locations in one workweek exceeded the 40-hour threshold for overtime pay under the FLSA. SUMF ¶ 96.

The hours employees worked at two or more of the corporate Defendants' locations should be combined for overtime purposes because the corporate Defendants here are horizontal joint employers under the FLSA. "[I]f the employers are sufficiently associated with respect to the employment of the employee, they are joint employers and must aggregate the hours worked for each for purposes of determining compliance with the Act." 29 C.F.R. § 791.2(e)(2). In general, employers are "sufficiently associated" to be joint employers where: (1) there is an

arrangement to share an employee's services; (2) "[o]ne employer is acting directly or indirectly in the interest of the other employer in relation to the employee;" or (3) "[t]hey share control of the employee, directly or indirectly, by reason of the fact that one employer . . . is under common control with the other employer." *Id.* §§ 791.2(e)(2)(i)–(iii).[6]

In this case, there is no genuine dispute that the corporate Defendants are sufficiently associated to be joint employers. The corporate Defendants are under the control of a common owner/medical director—Defendant Dr. Farina. SUMF ¶¶ 1–2. The corporate Defendants share managers and other employees, such as doctors, medical secretaries, emergency medical technicians, receptionists, nurses, and x-ray technicians. SUMF ¶¶ 12, 29, 72. The corporate Defendants also share record keeping systems, bookkeeping services, human resources, legal services, accounting services, and billing services. SUMF ¶ 73. When employees work for more than one of the corporate Defendants, Defendants handle the employees' scheduling centrally and supervisors coordinate the employees' work schedules, which are approved by management. SUMF ¶¶ 78, 82.

In view of the foregoing, there is no genuine dispute that Defendants failed to combine the hours worked by employees in a workweek across the corporate Defendants' locations, and that the corporate Defendants jointly employed the employees that they shared. That failure to combine hours worked in a workweek among joint employers resulted in overtime violations as a matter of law.

---

[6] While certain portions of the joint employer regulation at 29 C.F.R. § 791.2 were recently vacated, Section 791.2(e) is still valid. *New York v. Scalia*, No. 1:20-CV-1689-GHW, 2020 WL 5370871, at *34 (S.D.N.Y. Sept. 8, 2020) ("[T]he Department's non-substantive revisions to horizontal joint employer liability are severable, so 29 C.F.R. § 791.2(e) remains in effect.").

II.     <u>Defendants Cannot Establish a Good Faith Defense to Liquidated Damages</u>

An employer who violates the overtime provisions of the FLSA is liable for both past due compensation and, in addition, an equal amount of liquidated damages. 29 U.S.C. § 216(c); *Chao v. Hotel Oasis, Inc*., 493 F.3d 26, 35 (1st Cir. 2007) ("The FLSA authorizes the Secretary of Labor to recover on behalf of employees unpaid wages and overtime compensation plus an equal amount in liquidated damages."). Liquidated damages under the FLSA are not punitive in nature, but rather "constitute[] compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Brooklyn Savs. Bank*, 324 U.S. at 707; *see also Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) ("Liquidated damages under the FLSA are considered compensatory rather than punitive in nature.").

The Court has the discretion to reduce or deny liquidated damages if the employer demonstrates that despite the failure to pay appropriate wages, it acted with subjective good faith and had objectively reasonable grounds for believing that the acts or omissions giving rise to the failure did not violate the FLSA. 29 U.S.C. § 260. "The only way an employer can escape liquidated damages is to 'show[] to the satisfaction of the court' that it acted in good faith and had reasonable grounds for believing that its acts did not violate the FLSA." *Hotel Oasis*, 493 F.3d at 35 (alteration in original) (quoting 29 U.S.C. § 260). The award of liquidated damages in an amount equal to back wages owed is "the norm." *Id.*

"[I]t is the *employer's* burden to show good faith and objective reasonableness." *Id.* at 36 (emphasis in original). "The burden, under 29 U.S.C. § 260, is a difficult one to meet." *S. New Eng. Telecomms.*, 121 F.3d at 71 (internal quotation marks omitted). To establish good faith, "an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to

comply with them." *Barfield*, 537 F.3d at 150 (internal quotation marks omitted). For an employer's actions to constitute "active steps" capable of establishing a good faith defense to liquidated damages, an employer cannot just take general action directed at compliance with the FLSA, but rather must take specific steps tailored to the particular nature of the FLSA violation at issue. *See id.* at 151; *S. New Eng. Telecomms.*, 121 F.3d at 72 (liquidated damages were proper even where employer sought an opinion letter from the Department of Labor but its inquiry was not sufficiently tailored to the issue in the case).

In this case, there is no genuine dispute that Defendants have failed to take the requisite active steps to ascertain their overtime obligations under the FLSA and to comply with those obligations. With respect to the first category of overtime violation—failing to pay the overtime premium for overtime hours that were not authorized in advance—there is no genuine dispute that Dr. Farina established the policy regarding the pre-authorization of overtime and believed that Defendants could implement that policy if employees agreed to it. SUMF ¶¶ 10–11, 24 (Employee Agreements), 34–35, 67, 71, 110. There is no objectively reasonable basis for Defendants to believe that they need not pay employees for overtime hours worked because the employees may have agreed to Defendants' overtime policy. As noted above, for decades the Supreme Court has made clear "that to allow waiver of statutory wages by agreement would nullify the purposes of the Act." *Brooklyn Savs. Bank*, 324 U.S. at 707. In addition, there is no genuine dispute that Defendants failed to take the requisite active steps to specifically determine if the overtime policy Dr. Farina established complied with the FLSA.

With regard to Defendants' second category of overtime violation—deducting 30 minutes for lunch from employees' hours worked whether or not they took a lunch break—it is undisputed that Defendants categorically deducted 30 minutes from employees' work hours even

when those employees had already punched out for a 30-minute lunch. SUMF ¶¶ 55–59. Again, there is no objectively reasonable basis for Defendants to believe that it is lawful to make such categorical deductions from employees' hours worked without regard to whether the time is in fact worked by employees, as hours worked must be compensated. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 785.11. And Defendants have produced no evidence to show that they took the requisite active steps to determine if their 30-minute lunch deduction policy complied with the FLSA.

With respect to Defendants' third type of overtime violation—failing to combine hours worked across the corporate Defendants' locations—there is no dispute that Defendants did not pay employees the overtime premium when their hours worked at multiple of the corporate Defendants' locations exceeded 40 hours in a workweek. SUMF ¶¶ 86–95. There also is no genuine dispute that Defendants failed to take the required active steps to determine compliance with the statute in this regard. Indeed, Defendants did not even have a system in place to determine when an employee worked over 40 combined hours across Defendants' locations. SUMF ¶ 96.

Accordingly, there is no genuine dispute about Defendants' failure to take active steps to determine their overtime obligations under the FLSA or their lack of a reasonable basis to believe their actions complied with the statute. That conclusion is supported by Dr. Farina's view that "it is the responsibility of the employee to make sure they are getting paid accurately," SUMF ¶ 110, which is completely contrary to the FLSA as the statute places the onus on the employer to pay employees properly, *see, e.g.*, 29 U.S.C. § 207(a)(1); 29 C.F.R. §§ 785.11– 785.13; *Gotham Registry*, 514 F.3d at 290 ("the FLSA presumes that employers, not employees, are in the best position to address the evils of overwork and underpay"). Thus, Defendants cannot establish a good faith defense to liquidated damages as a matter of law, and the Secretary

is entitled to summary judgment on Defendants' liability for liquidated damages. The Secretary seeks liquidated damages equal to the amount of back wages that this Court may determine to be owed at a trial. *See* 29 U.S.C. § 216(c).

III.    Defendants Dr. Farina and Delsignore Are Employers for FLSA Purposes[7]

To be held liable under the overtime provisions of the FLSA, a person must be an "'employer,' which is defined broadly to include 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Manning*, 725 F.3d at 47 (quoting 29 U.S.C. § 203(d)). Rather than looking to "technical common law concepts to define the scope of the employer-employee relationship under the Act," courts instead look "to economic reality." *Donovan v. Agnew*, 712 F.2d 1509, 1513 (1st Cir. 1983) (internal quotation marks omitted).

The United States Court of Appeals for the First Circuit has taken an approach to individual employer status under the FLSA that seeks to balance the protections from personal liability that exist in the use of the corporate form with "Congress's clear refusal 'to incorporate the common law parameters of the employer-employee relationship' into the FLSA." *Manning*, 725 F.3d at 47 (quoting *Agnew*, 712 F.2d at 1513). This balanced approach to individual liability under the FLSA consists of an inquiry into factors such as: (1) whether a corporate officer has an ownership interest in the corporation that is an employer; and (2) whether the individual has operational control over the day-to-day functioning of the corporation, including the compensation of employees and the corporation's financial affairs. *See Manning*, 725 F.3d at 47–48; *Hotel Oasis*, 493 F.3d at 34; *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 677–78 (1st Cir. 1998); *Agnew*, 712 F.2d at 1514. These factors are not dispositive, but are important

---

[7] There is no genuine dispute that one or more of the corporate Defendants employed the affected employees listed in Exhibit A to the Secretary's Complaint. SUMF ¶¶ 24, 80.

"'because they suggest that *an individual controls a corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA.*'" *Manning*, 725 F.3d at 47 (quoting *Baystate Alt. Staffing*, 163 F.3d at 678) (emphasis in *Manning*).

There is no genuine dispute that Defendants Dr. Farina and Delsignore each had the power to cause Defendants to compensate or not compensate employees in compliance with the FLSA. Defendant Dr. Farina was the sole owner, officer, and medical director of all four corporate Defendants. SUMF ¶¶ 1, 8. Dr. Farina developed all of the policies for the corporate Defendants, including the policy regarding Defendants' nonpayment of unauthorized overtime, and he drafted the Employee Policy and Procedure Manual that was enforced at all of the corporate Defendants' facilities. SUMF ¶¶ 10–11, 34. Dr. Farina had the authority to hire and fire employees, supervise employees, control employees' work schedules and conditions of employment, and determine the rate and method of employees' pay. SUMF ¶¶ 3–11. Dr. Farina's policies and actions directly caused the overtime violations in this case. Accordingly, Dr. Farina is an employer for purposes of the FLSA. *See Manning*, 725 F.3d at 47; *Baystate Alt. Staffing*, 168 F.3d at 678.

While Defendant Brenda Delsignore was not an owner or officer of the corporate Defendants, the First Circuit has stated that the FLSA's definition of employer does not exclude "those without high executive positions or ownership interests, as the economic reality test speaks broadly of individuals who have 'operational control over significant aspects of the business.'" *Manning*, 725 F.3d at 48 (quoting *Baystate Alt. Staffing*, 163 F.3d at 677). Delsignore was the practice manager and administrator of all four corporate Defendants and ran all four corporations, including enforcing payment policies. SUMF ¶¶ 12–17, 19–22. Delsignore, like Dr.

Farina, had the authority to hire and fire employees, supervise employees, control employees' work schedules and conditions of employment, and determine the rate and method of employees' pay. SUMF ¶¶ 3–11, 13–17, 19–22. Specifically with respect to overtime, Delsignore, had the authority to approve or disapprove payment of overtime worked by employees of all four corporate Defendants' locations. SUMF ¶¶ 20, 22, 41–42. The fact that Delsignore personally denied the payment of overtime worked by employees is evident on the face of Defendants' own records. SUMF ¶¶ 41–42. As the individual responsible for the act of disapproving overtime payments for employees who had recorded hours of overtime worked, Brenda Delsignore had "the personal responsibility for making decisions about the conduct of the business that contributed to the violations of the Act." *Baystate Alt. Staffing*, 163 F.3d at 678.

Accordingly, the Secretary is entitled to judgment as a matter of law that all of the Defendants, including Dr. Farina and Delsignore, are employers of the employees at issue in this case for purposes of the FLSA.

IV.     Summary Judgment is Warranted on Defendants' Recordkeeping Violations

Under the FLSA, Defendants were required to preserve accurate records of hours worked each workday and workweek by their nonexempt employees, as well as payments made for those hours worked, including overtime premiums. 29 C.F.R. §§ 516.2(a)(7)–(9). There is no genuine dispute that for certain hourly nonexempt employees, during the period between July 2015 and the present, Defendants did not record the actual hours worked by employees each day or each week. As discussed above, Defendants would at times deduct 30 minutes per day for lunch from the daily hours worked by certain employees, even though those employees had already clocked out for a 30-minute lunch. SUMF ¶ 100. Thus, the total hours per day and week Defendants

recorded for those employees on their time records do not reflect the actual daily and weekly hours worked by employees. SUMF ¶ 101.

Also as discussed above, during the period between July 2015 and the present, Defendants at times used the categories of "Other" or "Miscellaneous" on their payroll records to record payments made to employees during weeks in which those employees worked overtime hours. SUMF ¶¶ 60–71, 102. Those payments labelled by Defendants as "Other" or "Miscellaneous" were exactly or approximately equal to the employees' straight-time wage rates multiplied by the hours those employees worked over 40 per week. SUMF ¶ 102. During the workweeks when Defendants recorded pay as "Other" or "Miscellaneous," Defendants' payroll records did not contain any payments made for overtime hours. SUMF ¶ 103. Given Defendants' use of the "Other" and "Miscellaneous" categories of pay, their pay records did not accurately record each employees' straight time earnings, as required by 29 C.F.R. § 516.2(a)(8).

In addition, Defendants violated the recordkeeping requirements of 29 C.F.R. §§ 516.5–516.7, because they did not keep their employees' time records, for the preceding two-year period, and their employees' payroll records, for the preceding three-year period, "accessible at the places of employment, or at one or more established central recordkeeping offices where such records are customarily maintained," such that they could be "made available" to the Secretary "within 72 hours." 29 C.F.R. § 516.7(a). During its investigation of Defendants, the Wage and Hour Division of the United States Department of Labor requested payroll and time records from Defendants via an administrative subpoena, yet Defendants did not produce certain time records until discovery in this case, years after the subpoena was served. SUMF ¶¶ 104–07.

Accordingly, there is no genuine dispute that the Defendants violated certain recordkeeping requirements under the FLSA, and the Secretary is entitled to judgment as a matter of law on his recordkeeping claim.

V.      Defendants' Violations of the FLSA were Willful

"The FLSA imposes a two-year statute of limitations unless the violations are shown to be willful, in which case a three-year period applies." *Reich v. Newspapers of New Eng., Inc.*, 44 F.3d 1060, 1079 (1st Cir. 1995) (citing 29 U.S.C. § 255(a)). Violations of the FLSA are willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *accord Hotel Oasis*, 493 F.3d at 35; 29 C.F.R. § 578.3(c)(1).

There is no genuine dispute that Defendants knew about the FLSA's requirement to pay employees an overtime premium for hours worked over 40 per week, as they had a policy regarding overtime work. SUMF ¶¶ 20, 22–23, 34–35, 108. There is also no genuine dispute that Defendants knew their employees worked more than 40 hours, as that is evident from Defendants' own records. SUMF ¶¶ 38–52, 55–71. And there is no genuine dispute that Defendants did not pay their employees any overtime premium for hours worked over 40 in a week where Defendants had not approved those overtime hours in advance. SUMF ¶¶ 34–35, 108–09. Thus, Defendants knowingly did not pay their employees the required premium for the overtime hours those employees worked.

The fact that employees may have agreed to Defendants' overtime policy, SUMF ¶ 24 (Employee Agreements), is of no moment. In the face of decades of clear Supreme Court precedent that employers and employees cannot agree to circumvent the requirements of the FLSA, *Brooklyn Savs. Bank*, 324 U.S. at 707, Defendants were at least reckless in their disregard

of the statute insofar as they relied on their agreements with employees to not properly pay them the required overtime premium, *cf. Flores v. City of San Gabriel*, 824 F.3d 890, 906–07 (9th Cir. 2016) ("It is likely to be the exception, rather than the rule, that controlling case law addresses the precise question faced by an employer trying to determine its obligations under the FLSA, and thus only a small subset of FLSA violations would be considered willful if the existence of binding authority on the subject were our only consideration.").

Defendants' recklessness with respect to their obligations under the FLSA is further evidenced by Dr. Farina's view that "it is the responsibility of the employee to make sure they are getting paid accurately." SUMF ¶ 110. That view is entirely contrary to the FLSA, under which it is the responsibility of an employer to properly pay employees for the hours the employer suffers or permits employees to work. *See* 29 U.S.C. §§ 203(g), 207(a)(1); 29 C.F.R. §§ 785.11–785.133; *Gotham Registry*, 514 F.3d at 290.

Further, Defendants' failure to keep adequate records, and their inaccurate manner of recording pay to employees under the "Miscellaneous" and "Other" categories, supports a finding of willfulness in this case. *See Hotel Oasis*, 493 F.3d at 35 (recognizing that an employer's "failure to keep adequate payroll records and its intentional manipulation of the records it did keep" can support a finding of willfulness).

In view of the foregoing, the Secretary is entitled to summary judgment on the willful nature of Defendants' violations of the FLSA.

VI.     Injunctive Relief is Warranted

Based on Defendants' ongoing and willful FLSA violations, the Court should enjoin them from future violations of the overtime and recordkeeping provisions of the statute. "The FLSA authorizes the district courts to enjoin violations of the overtime and recordkeeping

provisions of the Act." *Newspapers of New Eng., Inc.*, 44 F.3d at 1081 (citing 29 U.S.C. § 217). The Court has discretion with respect to the issuance of such an injunction. *Id.* "In exercising its discretion, the district court should weigh the finding of the violation established . . . against the factors that indicate the violations are not likely to recur, such as intent to comply, extraordinary efforts to prevent recurrence, absence of repetitive violations, and absence of bad faith." *Id.* (internal quotation marks omitted).

The undisputed evidence in this case shows that Defendants are likely to continue violating the FLSA as they have done throughout the course of this litigation. As discussed above, Defendants still implement their unlawful policy of not paying employees the required overtime premium for overtime hours worked, unless Defendants authorize those hours in advance. SUMF ¶ 111. Thus, Defendants have not shown any intention to comply with the FLSA, nor have they made extraordinary efforts to prevent continued violations, and, as set forth above, they have no good faith defense. Accordingly, an injunction restraining Defendants from violating the FLSA in the future is warranted.

## CONCLUSION

For the reasons set forth above, there are no genuine disputes of material fact and the Secretary is entitled to judgment as a matter of law against Defendants on the following issues:

1) Defendants failed to pay their employees the premium required by the FLSA for overtime hours worked;

2) The Secretary is entitled to recover liquidated damages on behalf of employees who were denied compensation as a result of Defendants' overtime violations;

3) Defendants were or are employers of the employees listed in Exhibit A to the Secretary's Complaint in this case (with the exception of the 12 employees who Defendants claim are exempt under the FLSA);

4) Defendants violated the recordkeeping provisions of the FLSA; and

5) Defendants' FLSA violations were willful and are ongoing.

The Secretary respectfully requests that the Court issue an order permanently enjoining and restraining Defendants, their agents, servants, employees, and those persons in active concert or participation with them, or acting in their interest and behalf, from violating the provisions of Sections 7, 11, 15(a)(2), and 15(a)(5) of the FLSA, 29 U.S.C. §§ 207, 211, 215(a)(2), and 215(a)(5).

Should the Court enter partial summary judgment for the Secretary as requested above, the only issues for trial would be the amount of compensation Defendants owe to their nonexempt employees for overtime hours worked and whether Defendants have met their burden to prove that the 12 individuals they have identified as exempt from the FLSA are properly classified as exempt.

Respectfully submitted,

For Plaintiff Secretary of Labor

Kate S. O'Scannlain
Solicitor of Labor

Post Office Address:
U.S. Department of Labor
Office of the Solicitor                 Maia S. Fisher
JFK Federal Building, Room E–375        Regional Solicitor
Boston, Massachusetts 02203
TEL: (617) 565–2500                     */s/ Susan G. Salzberg*
FAX: (617) 565–2142                     Susan G. Salzberg (MA556437)
salzberg.susan@dol.gov                  Senior Trial Attorney
                                        U.S. Department of Labor
Date: October 16, 2016                  Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby do certify that I served the foregoing document to Defendants through their attorney, Michael J. Lepizzera, Jr., on the 16th day of October, 2020, by ECF.

*/s/ Susan G. Salzberg*
Susan G. Salzberg (MA556437)
Senior Trial Attorney
U.S. Department of Labor
