UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

EUGENE SCALIA, Secretary of
Labor, United States Department of Labor,

    Plaintiff,

  v.

NORTH PROVIDENCE PRIMARY CARE
ASSOCIATES INC., NORTH PROVIDENCE
URGENT CARE, INC., CENTER OF NEW
ENGLAND PRIMARY CARE, INC.,
CENTER OF NEW ENGLAND URGENT
CARE, INC., Dr. ANTHONY FARINA, JR.,
AND BRENDA DELSIGNORE,

    Defendants.

Civil Action No.
1:19–cv–00002–JJM–LDA

## SECRETARY'S STATEMENT OF UNDISPUTED MATERIAL FACTS

I.    Employment Relationship and Employer Status Under the FLSA

  A. *Dr. Anthony Farina, Jr. is an Employer Under the FLSA*

    1.    During the period between July 20, 2015 and the present, Defendant Dr. Anthony

Farina, Jr. was the sole corporate officer of Defendants North Providence Primary Care

Associates, Inc.; North Providence Urgent Care, Inc.; Center of New England Primary Care,

Inc.; Center of New England Urgent Care, Inc. (collectively, the "corporate Defendants").

(Sec'y's First Requests for Admissions, Request No. 1 (Ex. A to Declaration of Susan G.

Salzberg ("Salzberg Decl.")).[1]

---

[1] The Secretary served his First Requests for Admission on all Defendants on July 23, 2019, and Defendants failed to respond to those requests. Accordingly, each of those requests is deemed admitted by operation of Rule 36(a)(3) of the Federal Rules of Civil Procedure. Those admissions by default are conclusive, even where other evidence may contradict them. *See In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) ("Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary

2.     During the period between July 20, 2015 and the present, Dr. Farina owned and operated each of the corporate Defendants. Sec'y's First Requests for Admissions, Request No. 2 (Ex. A to Salzberg Decl.).

3.     During the period between July 20, 2015 and the present, Dr. Farina made decisions regarding the hiring and firing of employees working at each of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 3 (Ex. A to Salzberg Decl.).

4.     During the period between July 20, 2015 and the present, Dr. Farina made decisions regarding the scheduling of employees working at each of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 4 (Ex. A to Salzberg Decl.).

5.     During the period between July 20, 2015 and the present, Dr. Farina made decisions regarding the supervision of employees working at each of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 5 (Ex. A to Salzberg Decl.).

6.     During the period between July 20, 2015 and the present, Dr. Farina made decisions regarding the recording of hours worked by employees and payments made to employees working at each of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 6 (Ex. A to Salzberg Decl.).

7.     During the period between July 20, 2015 and the present, Dr. Farina made decisions regarding payment to and pay practices for employees working at each of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 7 (Ex. A to Salzberg Decl.).

---

judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record.").

8.     At the times relevant to this case, Dr. Farina has been the sole officer, shareholder, and medical director of the corporate Defendants. Def. Farina's Responses to Pl.'s First Set of Interrogatories, Response No. 3 (Ex. B to Salzberg Decl.).

9.     At the times relevant to this case, Dr. Farina has had ultimate decision-making authority with respect to the corporate Defendants. Def. Farina's Responses to Pl.'s First Set of Interrogatories, Response Nos. 2–3 (Ex. B to Salzberg Decl.).

10.     Dr. Farina created the policies and procedures governing the employees who work for the corporate Defendants. Def. Farina's Responses to Pl.'s First Set of Interrogatories, Response Nos. 2–3, 8 (Ex. B to Salzberg Decl.); Deposition of Def. Dr. Anthony Farina, June 25, 2020 ("AF Dep.") 9:13–15, 16–21; 17:13–14; 20:20–21; 21:1 (Ex. C to Salzberg Decl.).

11.     Dr. Farina wrote the "Employee Policies and Procedures" handbook enforced at all of the corporate Defendants' locations during the period between July 20, 2015 and the present. Sec'y's First Requests for Admissions (Farina and Delsignore), Request Nos. 33–34; Sec'y's First Requests for Admissions (corporate Defendants), Request Nos. 34–35 (Ex. A to Salzberg Decl.); AF Dep. 99:15–21; 100:1–2, Ex. 11 to AF Dep. (Ex. C to Salzberg Decl.).

B. *Brenda Delsignore is an Employer Under the FLSA*

12.     During the period between July 20, 2015 and the present, Brenda Delsignore was the practice manager for all of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 8 (Ex. A to Salzberg Decl.); Def. Delsignore's Responses to Pl.'s First Set of Interrogatories, Response No. 2(a) (Ex. D to Salzberg Decl.).

13.     During the period between July 20, 2015 and the present, Delsignore had the authority to hire and fire employees working at each of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 9 (Ex. A to Salzberg Decl.); Def.

Delsignore's Responses to Pl.'s First Set of Interrogatories, Response No. 2(a) (Ex. D to Salzberg Decl.).

14.     During the period between July 20, 2015 and the present, Delsignore made decisions regarding and had the authority to control the work schedules of employees working at each of the of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 10 (Ex. A to Salzberg Decl.); Def. Delsignore's Responses to Pl.'s First Set of Interrogatories, Response No. 2(a) (Ex. D to Salzberg Decl.).

15.     During the period between July 20, 2015 and the present, Delsignore made decisions regarding the supervision of employees working at each of the of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 11 (Ex. A to Salzberg Decl.);  Deposition of Defendant Brenda Delsignore, June 25–26, 2020 ("BD Dep.") 20:12–15 (Ex. E to Salzberg Decl.).

16.     During the period between July 20, 2015 and the present, Delsignore made decisions regarding the recording of hours worked by employees and payments made to employees working at each of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 12 (Ex. A to Salzberg Decl.).

17.     During the period between July 20, 2015 and the present, Delsignore made decisions regarding payment to and pay practices for employees working at each of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 13 (Ex. A to Salzberg Decl.).

18.     During the period between July 20, 2015 and the present, Delsignore handled the billing at each of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request Nos. 14–15 (Ex. A to Salzberg Decl.).

19.     During the period between July 20, 2015 and the present, Delsignore determined the rates of pay for employees working at each of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 18 (Ex. A to Salzberg Decl.).

20.     During the period between July 20, 2015 and the present, Delsignore enforced payment policies with respect to employees working at each of the corporate Defendants' locations. Sec'y's First Requests for Admissions, Request No. 20 (Ex. A to Salzberg Decl.).

21.     During the period between July 20, 2015 and the present, Delsignore enforced the policy that Defendants deduct 30 minutes for lunch from all employees' hours worked at all of the corporate Defendants' locations regardless of whether an employee takes a lunch break. Sec'y's First Requests for Admissions, Request No. 22 (Ex. A to Salzberg Decl.).

22.     During the period between July 20, 2015 and the present, Delsignore had the authority to approve or disapprove payment for overtime worked by employees. AF Dep. 9:16–21; 52:2–4 (Ex. C to Salzberg Decl.).

23.     The "Employee Policies and Procedures" handbook enforced at all four corporate Defendants' locations during the period between July 20, 2015 and the present stated: "All overtime requires the direct approval of the practice administrator." AF Dep. Ex. 11 at 5; AF Dep. 99:15–21; 100:1–2 (Ex. C to Salzberg Decl.).

C.  *The Corporate Defendants Employed the Employees in this Case*

24.     The employees listed in Exhibit A to the Secretary's Complaint in this case were employed by one or more of the corporate defendants. Corporate Defs.' April 13, 2020 Supp. Responses to Pl.'s First Request for Production of Documents, Response No. 7 (Ex. F. to Salzberg Decl.); Employee Agreements (Ex. H to Salzberg Decl.); Def. Farina's Responses to Pl.'s First Set of Interrogatories, Response No. 8 (Ex. B to Salzberg Decl.).

II.    <u>Coverage</u>

    A. *Defendants Were Engaged in Related Activities for a Common Business Purpose*

25.     North Providence Primary Care Associates and Center of New England Primary Care are internal medicine facilities providing physical exams with a focus on chronic medical issues. BD Dep. 9:7–21; 11:11–21 (Ex. E to Salzberg Decl.).

26.     North Providence Urgent Care and Center of New England Urgent Care are walk-in facilities for medical services with a focus on patients with urgent problems who may or may not have a primary care doctor. BD Dep. 9:7–21; 11:11–21 (Ex. E to Salzberg Decl.).

27.     North Providence Primary Care and North Providence Urgent Care share the same building at 1830 Mineral Spring Avenue, North Providence, Rhode Island, with the primary care located on the second floor and urgent care located on the first floor. AF Dep. 11:2–7 (Ex. C to Salzberg Decl.).

28.     Center of New England Primary Care and Center of New England Urgent Care share the same floor of a building located at 775 Center of New England Boulevard, West Greenwich, Rhode Island, with half of the floor dedicated to primary care and half of it to urgent care. AF Dep. 15:13–18 (Ex. C to Salzberg Decl.); BD Dep. 12:7–9 (Ex. E to Salzberg Decl.).

29.     Denise Wygant acted periodically as both the manager and bookkeeper for all four corporate Defendants during the period between July 2015 and May 2020. Deposition of Denise Wygant, June 26, 2020 ("DW Dep.") 8:20–21; 9:1–10; 11:16–18 (Ex. G to Salzberg Decl.).

30.     The corporate Defendants have stipulated for purposes of this case that they are an enterprise under the FLSA. Corporate Defs.' April 13, 2020 Supp. Responses to Pl.'s First Request for Production of Documents at 1–2 n.1 (Ex. F to Salzberg Decl.).

B. *Annual Gross Volume of Sales and Interstate Commerce*

31.     During the period between July 20, 2014 and the present, each of the corporate Defendants has had an annual gross volume of sales made or business done in an amount not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated). Sec'y's First Requests for Admissions, Request No. 26 (Ex. A to Salzberg Decl.).

32.     During the period between July 20, 2014 and the present, all of the corporate Defendants had a combined annual gross volume of sales made or business done in an amount not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated). Sec'y's First Requests for Admissions, Request No. 27 (Ex. A to Salzberg Decl.).

33.     During the period between July 20, 2014 and the present, employees of each corporate Defendant have used goods and/or equipment (including but not limited to medical supplies and equipment) that have crossed state lines. Sec'y's First Requests for Admissions (Farina and Delsignore), Request No. 28; Sec'y's First Requests for Admissions (corporate Defendants) Request No. 29 (Ex. A to Salzberg Decl.).

III.    Defendants' Overtime Violations

A. *Failure to Pay the Overtime Premium for Overtime Hours That Were not Pre-authorized*

34.     During the period between July 20, 2015 and the present, Defendants maintained and enforced the following policy at all of the corporate Defendants' locations: "For non-salaried employees it is not appropriate for you to take additional shifts or time if you are going to exceed 40 hours per week. All overtime requires the direct approval of the practice administrator. In addition, it is required that there exists strict adherence to the schedule requiring break time and shifts ends. Only authorized overtime will be approved and paid for. It is the responsibility of the employee to adhere to the schedule at all times. **__No overtime will be allowed unless an__**

**overtime sheet is submitted to payroll with the appropriate supervisors signature**.” AF Dep. Ex. 11 at 5 (emphasis in original); AF Dep. 99:15–21; 100:1–2 (Ex. C to Salzberg Decl.).

35.     During the period between July 20, 2015 and the present, if overtime work was not authorized by Defendants’ management and an employee worked overtime hours, Defendants would not pay that employee any overtime premium for those overtime hours worked. BD Dep. 9:2–6; 48:21; 49:1–10 (Ex. E to Salzberg Decl.).

36.     Defendants often did not pay employees for overtime hours worked because those hours were not authorized in advance by Defendants. DW Dep. 54:11–13 (Ex. G to Salzberg Decl.).

37.     Between July 20, 2015 and May 2020, Defendants did not discipline employees for working overtime that was not authorized. DW Dep. 14:3–9; 57:20–21; 58:1–2 (Ex. G to Salzberg Decl.).

38.     Defendants did not pay their employee Jessica Nixon any overtime premium for the workweek of September 19, 2016 through September 24, 2016, and Defendants’ time records show that Nixon worked 43.25 hours during that workweek. Ex. 7 to BD Dep. at 4–5 of 7 and 89 of 141 (Ex. E to Salzberg Decl.).

39.     Handwriting on Nixon’s time records says “No O/time approved” for the workweek of September 19, 2016 through September 24, 2016. Ex. 7 to BD Dep at 4 of 7 (Ex. E to Salzberg Decl.).

40.     Defendants only paid Nixon straight time for 40 hours of work for the workweek of September 19, 2016 through September 24, 2016. Ex. 7 to BD Dep. at 89 of 141 (Ex. E to Salzberg Decl.).

41.     The handwriting stating "No O/time approved" on the time records for Nixon for the workweek of September 19, 2016 through September 24, 2016 is Defendant Delsignore's handwriting. BD Dep. 49:16–21; 50:1–5; Ex. 7 to BD Dep. at 4 of 7 (Ex. E to Salzberg Decl.).

42.     Delsignore wrote "No O/time approved" on Nixon's time record because Nixon had not been approved to work those overtime hours. BD Dep. 49:16–21; 50:1–5; Ex. 7 to BD Dep. at 4 of 7 (Ex. E to Salzberg Decl.).

43.     Defendants did not pay Nixon any overtime premium for the workweek of November 7, 2016 through November 11, 2016, and Defendants' time records show that Nixon worked 42.5 hours that week. DW Dep. 61:3–20 (Ex. G to Salzberg Decl.); Ex. 8 to DW Dep. at 5 of 8, 119 of 141 (Ex. G to Salzberg Decl.).

44.     Denise Wygant wrote "40 No OT authorized" with respect to Nixon for the workweek of November 7, 2016 through November 11, 2016, because Nixon had not received written authorization from Delsignore to work overtime. DW Dep. 61:3–20; Ex. 8 to DW Dep. at 5 of 8 (Ex. G to Salzberg Decl.).

45.     Defendants did not pay their employee Zenobia Seyon any overtime premium for the workweek of November 7, 2016 through November 11, 2016, and Defendants' records show that Seyon worked 45.75 hours that week. Ex. 8 to DW Dep. at 5–6 of 8, 119 of 141 (Ex. G to Salzberg Decl.).

46.     Denise Wygant wrote on Seyon's time record for the workweek of November 7, 2016 through November 11, 2016, "40 No OT authorized." Ex. 8 to DW Dep. at 6 of 8; DW Dep. 61:21; 62:1–16 (Ex. G to Salzberg Decl.).

47.     Defendants' pay records for Seyon show that they paid Seyon at Seyon's straight-time pay rate for only 40 hours for the workweek of November 7, 2016 through November 11, 2016. Ex. 8 to DW Dep. at 119 of 141 (Ex. G to Salzberg Decl.).

48.     Defendants did not pay Seyon any overtime premium for the workweek of November 7, 2016 through November 11, 2016 because Seyon had not received authorization in advance to work those overtime hours. DW Dep. 61:21; 62:1–16; Ex. 8 to DW Dep. at 119 of 141 (Ex. G to Salzberg Decl.).

49.     Defendants did not pay their employee Roseann Carey any overtime premium for the workweek of January 8, 2018 through January 11, 2018, and Defendants' records show Carey worked 44.55 hours that week. DW Dep. 63:1–19; Ex. 9 to DW Dep. at 1–2 of 4, 19 of 93 (Ex. G to Salzberg Decl.).

50.     Denise Wygant wrote "40 No OT Approved" on Carey's time record for the workweek of January 8, 2018 through January 11, 2018. DW Dep. 63:1–19; Ex. 9 to DW Dep. at 2 of 4 (Ex. G to Salzberg Decl.).

51.     Defendants' pay records for Carey show that they paid Carey at Carey's straight-time pay rate for only 40 hours for the workweek of January 8, 2018 through January 11, 2018. Ex. 9 to DW Dep. at 19 of 93 (Ex. G to Salzberg Decl.).

52.     Defendants did not pay Carey any overtime premium for the workweek of January 8, 2018 through January 11, 2018, because those overtime hours were not authorized by Defendants. AF Dep. 97:5–21, 98:1–21; Ex. 10 to AF Dep at 19 of 93 (Ex. C to Salzberg Decl.); DW Dep. 63:1–19 (Ex. G to Salzberg Decl.).

B. *Thirty Minute Lunch Deductions*

53.     During the period between July 20, 2015 and the present, Delsignore enforced the policy that 30 minutes for lunch would be deducted from all employees' hours worked at all of the corporate Defendants' locations, regardless of whether an employee took lunch. Sec'y's First Requests for Admissions, Request No. 22 (Ex. A to Salzberg Decl.).

54.     On or about September 30, 2016, Defendants posted a notice near the time clock at the urgent care location located at 775 Center of New England Boulevard, West Greenwich, Rhode Island that stated: "All employees scheduled to open must be here by 7:45 am NO LATER our doors unlock at 7:45 and patients are walking in with no one here. Also: RI State law all employees working more than a 6 hour shift must take a 30 minute meal break. This will be automatically deducted from your time sheet. Your break should not be taken when it will compromise patient care." Sec'y's First Requests for Admissions (Farina and Delsignore), Request No. 29; Sec'y's First Requests for Admissions (corporate Defendants), Request No. 30 (Ex. A to Salzberg Decl.).

55.     During the period between July 20, 2015 and the present, Defendants deducted 30 minutes from a number of hourly employees' daily time records for lunch even though those employees had already punched out for a 30-minute lunch on each of those days. Ex. 6 to AF Dep. at Sec'y's Summ. J. 0001, 0009; Ex. 7 to AF Dep. at Sec'y's Summ. J. 0001, 0007 (Ex. C to Salzberg Decl.).

56.     Defendants deducted 30 minutes from the hours worked of their employee Kaylee Crespo during each day of the workweek from June 6, 2016 to June 10, 2016. Ex. 6 to AF Dep. at Sec'y's Summ. J. 0001 (Ex. C to Salzberg Decl.).

57.     These 30-minute daily deductions resulted in Crespo not being paid for 2.5 hours

of her total 42.25 hours worked during the workweek from June 6, 2016 to June 10, 2016, and not being paid any overtime premium for the 2.25 overtime hours she worked that week. Ex. 6 to AF Dep. at Sec'y's Summ. J. 0001, 0009 (Ex. C to Salzberg Decl.).

58.     Defendants deducted 30 minutes from the daily hours worked by their employee Enid Rodriguez on Monday, Tuesday, Wednesday and Thursday of the workweek August 29, 2016 through September 2, 2016. Ex. 7 to AF Dep. at Sec'y's Summ. J. 0001 (Ex. C to Salzberg Decl.).

59.     These 30-minute deductions during the workweek August 29, 2016 through September 2, 2016 resulted in Rodriguez not being paid any overtime premium for overtime hours worked. Ex. 7 to AF Dep. at Sec'y's Summ. J. 0001, 0007 (Ex. C to Salzberg Decl.).

    C.  *Nonpayment of Overtime Premiums using "Miscellaneous" and "Other" Categories*

60.     During the period from July 20, 2015 to the present, the payroll records for Defendants' employees at times included payment categories of "Miscellaneous" or "Other," which contained a payment amount that equaled approximately or exactly employees' regular rates of pay multiplied by the amount of hours over 40 per week worked by employees. Ex. 4 to AF Dep. at Sec'y's Summ. J. 0001, 0008; Ex. 5 to AF Dep. at Sec'y's Summ. J. 0001, 0003; Ex. 7 to AF Dep. at Sec'y's Summ. J. 0001, 0007 (Ex. C to Salzberg Decl.).

61.     Defendants' employee Enid Rodriguez worked a total of 46.75 hours during the workweek of August 29, 2016 to September 2, 2016. Ex. 7 to AF Dep. at Sec'y's Summ. J. 0001 (Ex. C to Salzberg Decl.).

62.      There is no record of Defendants making any straight-time payment or overtime premium payment to Rodriguez for any of the 6.75 hours of overtime that Rodriguez worked during the workweek of August 29, 2016 to September 2, 2016. Ex. 7 to AF Dep. at Sec'y's Summ. J. 0001, 0007 (Ex. C to Salzberg Decl.).

63.     Defendants paid Rodriguez $91.00 of miscellaneous pay for the workweek of August 29, 2016 to September 2, 2016, which, if divided by Rodriguez's $13.00 per hour regular rate of pay, equals seven hours. Ex. 7 to AF Dep. at Sec'y's Summ. J. 0007 (Ex. C to Salzberg Decl.).

64.     Defendants' employee Sidra Ali worked a total of 42.5 hours during the workweek of September 12, 2016 through September 16, 2016. Ex. 5 to AF Dep. at Sec'y's Summ. J. 0001 (Ex. C to Salzberg Decl.).

65.     There is no record of Defendants making any straight-time payment or overtime premium payment to Ali for any of the 2.5 hours of overtime that Ali worked during the workweek of September 12, 2016 through September 16, 2016. Ex. 5 to AF Dep. at Sec'y's Summ. J. 0001, 0003 (Ex. C to Salzberg Decl.).

66.     Defendants paid Ali $35.00 of miscellaneous pay for the workweek of September 12, 2016 through September 16, 2016, which, if divided by Ali's $14.00 per hour regular rate of pay, equals 2.5 hours. Ex. 5 to AF Dep. at Sec'y's Summ. J. 0003 (Ex. C to Salzberg Decl.).

67.     If Ali's overtime hours were not approved by Defendants, she would not be have been paid for any of those overtime hours per Defendants' overtime policies and procedures. AF Dep. 76:17–21; 77:1–4 (Ex. C to Salzberg Decl.).

68.     Defendants' employee Nathalie Soukamneuth worked a total of 42.75 hours during the workweek of September 7, 2016 through September 11, 2016. Ex. 4 to AF Dep. at Sec'y's Summ. J. 0001 (Ex. C to Salzberg Decl.).

69.     There is no record of Defendants making any straight-time payment or overtime premium payment to Soukamneuth for any of the 2.75 hours of overtime that Soukamneuth worked during the workweek of September 7, 2016 through September 11, 2016. Ex. 4 to AF

Dep. at Sec'y's Summ. J. 0001, 0008 (Ex. C to Salzberg Decl.).

70. Defendants paid Soukamneuth $68.75 of "Other" pay for the workweek of September 7, 2016 through September 11, 2016, which, if divided by Soukamneuth's $25.00 per hour regular rate of pay, equals 2.75 hours. Ex. 4 to AF Dep. at Sec'y's Summ. J. 0008 (Ex. C to Salzberg Decl.).

71. If the overtime hours worked by Soukanmeuth were not authorized prior to Soukanmeuth working them, Defendants' policy was not to pay for those hours. DW Dep. 45:21; 46:1–4 (Ex. G to Salzberg Decl.).

D. *Working in Two Locations and Not Combining Hours for Overtime Purposes*

72. During the period between July 20, 2015 and the present, the corporate Defendants shared a number of employees, including doctors, medical secretaries, emergency medical technicians, and x-ray technicians, in that some employees worked at more than one of the corporate Defendants' locations in the same workweek. Sec'y's First Requests for Admissions, Request No. 25 (Ex. A to Salzberg Decl.); AF Dep. 9:16–21; 21:9–16 (Ex. C to Salzberg Decl.).

73. During the period from July 2015 to the present, all of the corporate Defendants have shared a recordkeeping system, book keeping services, human resources, legal services, accounting services, billing services, and practice administration. AF Dep. 9:16–21; 18:7–17; 21:2–8 (Ex. C to Salzberg Decl.).

74. During the period between July 20, 2015 and the present, the corporate Defendants have made referrals between their urgent care and primary care facilities, and physicians at the primary care facilities have ordered tests from the urgent care facilities. AF Dep. 9:16–21; 11:8–21; 12:1–4; 15:19–21; 16:1–2, 7–20 (Ex. C to Salzberg Decl.).

75. During the period between July 20, 2015 and the present, referrals between the

Center of New England facilities and the North Providence facilities have occurred when a patient wanted to transfer to the geographic location of the other facilities. AF Dep. 9:16–21; 16:13–20 (Ex. C to Salzberg Decl.).

76.     During the period from July 20, 2015 to the present, Defendants' two primary care facilities have been consistent with respect to how they have been operated and what services they have offered. AF Dep. 9:16–21; 17:6–12 (Ex. C Salzberg Decl.).

77.     Supply purchasing was done centrally for the four corporate Defendants. BD Dep. 18:12–15 (Ex. E to Salzberg Decl.).

78.     During the period from July 2015 to the present, when employees worked for more than one of the four corporate Defendants, supervisors would coordinate their work schedules, which would be approved by Defendants' management. AF Dep. 9:16–21; 21:17–21; 22:1–4 (Ex. C to Salzberg Decl.).

79.     During the period from July 2015 to the present, when x-ray technicians worked at the Center of New England Urgent Care facility and the North Providence Urgent Care facility they were supervised by one x-ray supervisor, who would perform supervision for both facilities. AF Dep. 9:16–21; 22:18–21; 23:1 (Ex. C to Salzberg Decl.).

80.     During the period from July 2015 to the present, when employees worked for more than one of the four corporate Defendants, they were employed by each of the corporate Defendants for which they performed work. AF Dep. 9:16–21; 24:20–21; 25:1–2 (Ex. C to Salzberg Decl.).

81.     Since the onset of COVID-19 in Rhode Island, the North Providence urgent care and primary care facilities have been combined and are operating as one facility. AF Dep. 36:7–21; 37:1–4 (Ex. C to Salzberg Decl.).

82.     Scheduling across all four corporate Defendants occurred through a centralized computer system. AF Dep. 113:18–21; 114:1–21; 115: 1–21; 116:1–4 (Ex. C to Salzberg Decl.).

83.     During the period between July 2015 and May 2020, Denise Wygant periodically worked as Defendants' bookkeeper, and her duties included accounting and payroll, as well as processing the weekly time card report for all employees across all of the corporate Defendants' locations. DW Dep. 12:2–6 (Ex. G to Salzberg Decl.).

84.     Wygant performed management duties for all of the corporate Defendants' locations, such as running the front offices, monitoring the inventory, ordering supplies, and scheduling the staff. DW Dep. 13:15–21; 14:1–9; 16:21; 17:1–4 (Ex. G to Salzberg Decl.).

85.     During the time period between July 2015 and May 2020, Wygant scheduled employees at all of the corporate Defendants' locations. DW Dep. 14:3–9, 18–21; 15:1–5 (Ex. G to Salzberg Decl.).

86.     Defendants' payroll records for hourly employee Tracy Pitcauge show that she worked 24.5 hours during the workweek ending November 1, 2015 for Center of New England Urgent Care, Inc. Ex. 12 at 111 to AF Dep. (Ex. C to Salzberg Decl.)

87.     Defendants' payroll records for Pitcauge show that she worked 20 hours the workweek ending November 1, 2015 for North Providence Urgent Care, Inc. Ex 12 at 131 to AF Dep. (Ex. C to Salzberg Decl.)

88.     Defendants' payroll records for Pitcauge show that she was only paid straight-time wages for her hours worked at both Center of New England Urgent Care, Inc. and North Providence Urgent Care, Inc. during the workweek ending November 1, 2015, with no overtime premium payment. Ex. 12 at 111 & 131 to AF Dep. (Ex. C Salzberg Decl.); AF Dep. 106:3–21; 107:1–20 (Ex. C to Salzberg Decl.).

89.     Defendants' payroll records for hourly employee Marlaina Labossiere show that she worked 27 hours for Center of New England Urgent Care, Inc. the workweek ending September 13, 2015. Ex. 13 at 73 to AF Dep. (Ex. C to Salzberg Decl.).

90.     Defendants' payroll records for Labossiere, show that she worked 19 hours for North Providence Urgent Care, Inc. the workweek ending September 13, 2015. Ex. 14 at Bates No. 73 to AF Dep. (Ex. C to Salzberg Decl.)

91.     Defendants' payroll records for Labossiere show that she was only paid straight-time wages for her hours worked at both Center of New England Urgent Care, Inc. and North Providence Urgent Care, Inc. the workweek ending September 13, 2015, with no overtime premium payment. Ex. 13 at 73 & Ex. 14 at Bates No. 73 to AF Dep. (Ex. C to Salzberg Decl.).

92.     Defendants' payroll records for Labossiere, show that she worked 33 hours for Center of New England Urgent Care, Inc. the workweek ending October 11, 2015. Ex. 13 at 73 to AF Dep. (Ex. C to Salzberg Decl.).

93.     Defendants' payroll records for Labossiere, show that she worked 17 hours for North Providence Urgent Care, Inc. the workweek ending October 11, 2015. Ex. 14 at Bates No. 74 to AF Dep. (Ex. C to Salzberg Decl.)

94.     Defendants' payroll records for Labossiere show that she was only paid straight-time wages for her hours worked at both Center of New England Urgent Care, Inc. and North Providence Urgent Care, Inc. the workweek ending October 11, 2015, with no overtime premium payment. Ex. 13 at 73 & Ex. 14 at Bates No. 74 to AF Dep. (Ex. C to Salzberg Decl.).

95.     During the period between July 2015 and the present, Labossiere worked as an emergency medical technician at the Center of New England Urgent Care location but would fill in at the North Providence location when needed. AF Dep. 9:16–21; 118:8–11; 125:9–15 (Ex. C

to Salzberg Decl.).

96.     During the period from July 2015 to May 2020, the corporate Defendants had no system in place that could flag when an employee worked more than a combined total of 40 hours in one workweek across multiple of the corporate Defendants' locations. DW Dep. 14:3–9; 79:17–21; 80:1–2; 81:2–12 (Ex. G to Salzberg Decl.).

E.   *Not Accounting for Time Worked Prior to 8:00 a.m.*

97.     During the period between July 20, 2015 and the present, Defendants instructed some employees to report to work at 7:45 a.m., but Defendants did not pay those employees for their work until 8:00 a.m. Sec'y's First Requests for Admissions (Farina and Delsignore), Request No. 30; Sec'y's First Requests for Admissions (corporate Defendants), Request No. 31 (Ex. A to Salzberg Decl.).

98.     Between July 2015 and May 2020, Defendants had a policy not to compensate employees for any time they worked prior to 7:45 a.m. DW Dep. 27:1–21; 28:1–6 (Ex. G to Salzberg Decl.).

IV.   Defendants' Recordkeeping Violations

99.     At times during the period between July 2015 and the present, Defendants have not recorded the actual hours worked each day or each week by employees. Ex. 6 to AF Dep. at Sec'y's Summ. J. 0001, 0009; Ex. 7 to AF Dep. at Sec'y's Summ. J. 0001, 0007 (Ex. C to Salzberg Decl.).

100.    At times during the period between July 2015 and present, Defendants deducted 30 minutes per day from the hours worked by certain employees even though those employees had already clocked out for 30 minutes on each of those days. Ex. 6 to AF Dep. at Sec'y's Summ. J. 0001, 0009; Ex. 7 to AF Dep. at Sec'y's Summ. J. Ex. 0001, 0007 (Ex. C to Salzberg Decl.).

101. As a result of these 30-minute deductions, the time records for certain of Defendants' employees contain total hours worked for the day and the week that do not reflect the actual total daily or weekly hours those employees worked. Ex. 6 to AF Dep. at Sec'y's Summ. J. 0001, 0009; Ex. 7 to AF Dep. at Sec'y's Summ. J. 0001, 0007 (Ex. C to Salzberg Decl.).

102. At times during the period between July 2015 and the present, Defendants used categories called "Other" or "Miscellaneous" in their payroll records to record payments made to employees, and those payments were approximately or exactly equal to the employees' straight-time pay rates multiplied by their hours worked over 40 in those weeks. Ex. 4 to AF Dep. at Sec'y's Summ. J. 0001, 0008; Ex. 5 to AF Dep. at Sec'y's Summ. J. 0001, 0003; Ex. 7 to AF Dep. at Sec'y's Summ. J. 0001, 0007 (Ex. C to Salzberg Decl.).

103. At times during the period between July 2015 and the present, when Defendants used categories called "Other" or "Miscellaneous" on their payroll records for certain employees in a workweek, those records do not show any overtime premium payments made to those employees for those workweeks. Ex. 4 to AF Dep. at Sec'y's Summ. J. 0001, 0008; Ex. 5 to AF Dep. at Sec'y's Summ. J. 0001, 0003; Ex. 7 to AF Dep. at Sec'y's Summ. J. 0001, 0007 (Ex. C to Salzberg Decl.).

104. In response to the Wage and Hour Division requesting payroll and time records for a three-year period via administrative subpoena in January 2017, Defendants stated: "[T]he companies certify that they are not in possession of any other documents which are responsive to the subpoena. The companies have produced to the Department all of the records in its possession pursuant to the discussions amongst counsel." DW Dep. 86:2–6; Ex. 18 to DW Dep. (Ex. G to Salzberg Decl.).

105.    When the Wage and Hour Division requested payroll and time records via administrative subpoena in January 2017, Defendants did not produce within 72 hours certain time records for employees that were responsive to that that subpoena. BD Dep. 76:6–21; 77:1–19; 78:8–17: 80:6–21; 81:1–21; Exs. 14–17 to BD Dep. (Ex. E to Salzberg Decl.).

106.    Time records that were not produced to the Wage and Hour Division in response to the 2017 administrative subpoena were produced by Defendants to the Secretary in discovery in this case, approximately two-and-a-half years after the subpoena was served. Defs.' Responses to Sec'y's Second Requests for Admissions, Response Nos. 47–48 (Ex. I to Salzberg Decl.).

107.    The reason Defendants did not produce certain time records in 2017 in response to the subpoena and later produced those time records to the Secretary in discovery was that the box where the documents were located was misplaced and not found until January of 2020. BD Dep. 82:1–8; Exs. 14–17 to BD Dep. (Ex. E to Salzberg Decl.).

V.    Willfulness and Lack of Good Faith Defense

108.    Defendants' policy from 2015 to the present has been that when an employee works overtime hours and Defendants have not authorized those overtime hours in advance, Defendants will not pay employees the overtime premium for the overtime hours worked. BD Dep. 9:2–6; 48:21; 49:1–10 (Ex. E to Salzberg Decl.).

109.    Defendants knew that their employees worked overtime hours and that Defendants did not pay employees the overtime premium for those overtime hours worked. BD Dep. 49:16–21; 50:1–5; Ex. 7 at 4 of 7 to BD Dep. (Ex. E to Salzberg Decl.).

110.    Defendants' position is that it is the responsibility of employees to make sure they are getting paid accurately. AF Dep. 109:2–3 (Ex. C to Salzberg Decl.).

VI.    Defendants are Currently Not in Compliance with the FLSA

111.    Defendants currently still follow the policy of not paying employees an overtime premium for overtime hours worked unless the overtime hours are authorized by Defendants in advance. AF Dep. 99:15–21; 100:1–2; 101:18–21; 102:1–21; 103: 1–7; Ex. 11 at 5 to AF Dep. (Ex. C to Salzberg Decl.).

Respectfully submitted,

For Plaintiff Secretary of Labor

Kate S. O'Scannlain
Solicitor of Labor

Post Office Address:
U.S. Department of Labor               Maia S. Fisher
Office of the Solicitor                Regional Solicitor
JFK Federal Building, Room E–375
Boston, Massachusetts 02203            */s/ Susan G. Salzberg*
TEL: (617) 565–2500                    Susan G. Salzberg (MA556437)
FAX: (617) 565–2142                    Senior Trial Attorney
salzberg.susan@dol.gov
                                       U.S. Department of Labor
Date: October 16, 2020                 Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

   I hereby do certify that I served the foregoing document to Defendants through their attorney, Michael J. Lepizzera, Jr., on the 16th day of October, 2020, by ECF.


        */s/ Susan G. Salzberg*
        Susan G. Salzberg (MA556437)
        Senior Trial Attorney
        U.S. Department of Labor