UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

R. Alexander Acosta, Secretary of Labor,
United States Department of Labor
Plaintiff

vs. Civil Action No. 1:19-cv-00002-MSM-LDA

North Providence Primary Care Associates, Inc.;
North Providence Urgent Care Inc.;
Center of New England Primary Care Inc.;
Center of New England Urgent Care Inc.;
Dr. Anthony Farina, Jr.; and
Brenda DelSignore
Defendants

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants North Providence Primary Care Associates, Inc. ("NPPCA"), North Providence Urgent Care Inc. ("NPUC"), Center of New England Primary Care Inc. ("CNEPC"), Center of New England Urgent Care Inc. ("CNEUC"), Dr. Anthony Farina, Jr. ("Dr. Farina"); and Brenda DelSignore ("Mrs. DelSignore") (sometimes collectively, "defendants") hereby file their collective objection to the motion filed by plaintiff R. Alexander, Secretary of Labor, United States Department of Labor ("plaintiff" or the "Secretary") for partial summary judgment.

I. The Secretary's attempt to bootstrap liability in favor of all 102 employees by providing a very small random sample size of potential FLSA irregularities is insufficient to establish liability as a matter of law.

The crux of the defendants' objections goes to the unorthodox methodology utilized by the Secretary in their quest for **partial** summary judgment. In his moving papers, the Secretary passingly references the 102 employees who are listed in the initiating pleading which

commenced this case (*i.e.*, the Complaint) by way of an exhibit labelled Exhibit A. This Exhibit A solely consists of two running columns with the last name of the employee sitting in the first column and the adjoining second column setting forth the first name of the employee.[1] Despite the lengthy presentation by the Secretary, the motion itself (for the most part) fails to establish the specific Fair Labor Standards Act ("FLSA") **connected to each of the individual employees** who fall under the umbrella of this Complaint and legal proceeding.[2] The defendants understand that the Secretary has only moved for a **partial** summary judgment and a reading of the four (4) corners of plaintiff's moving papers appears to show only a small sample of payment irregularities for a discreet number of people (and nothing close to covering all 102 employees referenced in Exhibit A). Despite the small sample size provided by the Secretary in its moving papers, the defendants are concerned that the Secretary is attempting to establish liability for all FLSA claims at issue in this case **for each of the 102 individual employees**.[3] This impression is gleaned from defense counsel's reading of the Secretary's request for judgment as a matter of law on certain issues which include a finding that:

> 1) Defendants failed to pay **their employees** the premium required by the FLSA for overtime hours worked; 2) The Secretary is entitled to recover liquidated damages **on behalf of employees**

---

[1] For example, the supporting exhibit referenced in the Complaint starts off with identifying the two (2) first employees for which this Complaint has been brought:

**EXHIBIT A**

| | |
|---|---|
| Adams | Jamar |
| Ali | Sidra |

The first employee identified in Exhibit A is Jamar Adams. The exhibit proceeds on in the same manner to identify all 100+ employees for whom the Secretary seeks remedies under the FLSA.

[2] Defendants acknowledge that plaintiff has presented a small sample of alleged irregularities for some of the different categories of labor violations claimed in this case.

> **who were denied overtime compensation** as a result of Defendants' FLSA violations; 3) Defendants were or are employers **of the employees listed in Exhibit A to the Secretary's Complaint** in this case (with the exception of the 12 individuals that Defendants claim are exempt from the FLSA); 4) Defendants violated the recordkeeping provisions of the FLSA; and Defendants' FLSA violations were willful and are ongoing.
>
> See Secretary of Labor's Motion for Partial Summary Judgment [Doc. 20 at pg. 1-2]. (emphasis added)

Although the Secretary's catchall reference to all employees runs rampart in their request for relief, the motion itself is devoid of establishing **for each employee** at issue in this case, **the particular FLSA violation connected to each individual employee**[4] and **the specific date on which said FLSA violation was committed**. Besides for the sample violations alleged by the Secretary, there was no attempt by the plaintiff to lay out and establish FLSA violations committed by one or more of the defendants **against each employee listed in Exhibit A**. Defendants suggest that this is fatal to plaintiff's attempt to garner judgment as a matter of law on what appears to be the issue of liability (*i.e.*, establishing as a matter of law that each of the 102 employees fell victim to any and all of the FLSA violations alleged in plaintiff's complaint).

As defendants read the Secretary's motion, it appears that the Secretary is moving for partial summary judgment on the issue of liability at this time and is deferring the issue of damages—which in part would include "the amount of overtime compensation Defendants owe their nonexempt employees".[5] See [Doc. 20 at pg. 2]. The defendants are concerned that the Secretary is attempting to ignore the issue of liability **on each of the 102 employees** by

[4] For example, the motion lays out different FLSA violations charged by the Secretary which include deducting thirty (30) minutes from payroll time card details for lunch breaks and not paying the requisite overtime mandated by the FLSA.

[5] Plaintiff has also set aside for trial the issue of whether twelve (12) employees would qualify as exempt employees under the FLSA.

attempting to bootstrap a few select errors appearing from the payroll records produced by the Defendants which relate to a small portion of the employees[6] into a wholesale liability finding of FLSA violations in favor of **all 102 employees** and **against all of the defendants**.[7] This method is not an appropriate way to establish liability by any of the defendants **to a single employee**.

Before the trier of fact can establish "the amount of overtime compensation" owed to each employee, the Secretary is first required to show that a FLSA infraction was committed against the individual employee. The Secretary's moving papers fall woefully short of establishing liability in favor of each of the 102 employees who were allegedly harmed in this case and therefore plaintiff's motion for partial summary judgment should be denied on this basis alone.[8]

II. Plaintiff has not met their burden that the defendants' violations were willful and ongoing.

Following up on the argument *supra*, defendants maintain that the Secretary has not established (at this stage) that the defendants' technical violative actions were willful and

---

[6] The defendant corporate entities have employed hundreds of employees over the approximate five (5) year span of time covered by the Secretary's investigation. The defendants have produced voluminous records to the Secretary both during the administrative investigation and this litigation process. A small sample of random discrepancies or errors running across four (4) different separate corporate entities situated in different parts of the state and owned by a single shareholder (Dr. Farina) is not indicative of willful FLSA violations by the defendants and it certainly does not establish liability for each and every employee who worked for any of the defendant companies.

[7] As will be discussed below, defendants maintain that Mrs. DelSignore should be held liable for any of the alleged FLSA violations.

[8] Think of it this way, the Secretary is asking the court to defer a damage calculation until the time of trial since plaintiff recognizes the need for him to show the alleged financial harm caused to each employee. Well, before the Secretary can establish the alleged overtime pay owed to each employee, the Secretary will also need to show whether or not the individual employee was actually entitled to overtime pay during the particular week in question. Hence, the issue of liability (*i.e.*, whether the single employee worked the requisite 40 hours in the particular week in question and concurrently, in the same week, also worked a set number of hours in excess of the 40 hour limitation) must first be proven before the issue of damages is reached.

ongoing.[9] In a similar vein, defendants maintain that the Secretary should not be entitled to a finding of willful and ongoing before first establishing liability by the individual defendants to the employees. Viewing it from a slightly different lens, a question arises: Is a finding of willfulness against the defendants appropriate should the court find that only five percent (5%) of the violations claimed in this case have been established to the satisfaction of the trier of fact? The response to this question should be self-evident. No such finding should be made and therefore the lookback period should be shortened accordingly and any punitive measures or requests for injunctive relief that may flow from a willfulness finding should be rejected by this court.

Although the Secretary was sure to take snippets of the deposition testimony from the defendant witnesses which favored plaintiff's position, other portions of their testimony show that the defendants were not willfully violating the FLSA. For example, under questioning by the Secretary's counsel with respect to a single employee working for two (2) different defendant companies during the same week who looks to have exceeded the forty (40) hour work week when combining the hours worked for each company and who only received "straight time" for the overtime hours, Dr. Farina testified:

> **So, basically, if they worked for corporation A and corporation B and they were a secretary, the total hours would be added to corporation A and corporation B for that same week,** and paid for at the – according to the 40-hour work week. If, of course, they went over time and it was approved and they were scheduled for overtime hours, that **[they] were paid overtime hours.**
>
> See Exhibit A – Dr. Farina deposition transcript at pg. 104.

---

[9] This presupposes for a moment that all of the defendants (including Mrs. DelSignore) are employers under the FLSA. As acknowledged by plaintiff in his motion, Mrs. DelSignore is not an owner of any of the four (4) defendant medical facilities. Dr. Farina is the sole shareholder in each of those professional corporations..

To refute Dr. Farina's claim that a shared employee discharging more than forty (40) hours between two (2) of the defendant companies in the same week would have received overtime pay for the extra hours, counsel for the Secretary showed Dr. Farina payroll records at his deposition. See Exhibit A – Dr. Farina deposition transcript at pgs. 106 to 107. Those records appear to show that the employee in question worked a combined 44.5 hours between the two medical facilities and was only paid straight time for the extra 4.5 hours. After acknowledging that the records show the employee was not paid overtime, Dr. Farina added:

> A. Correct, because her payroll checks were being generated from two (2) separate facilities. I'm sure Tracy [the employee in question] should have or would have probably noticed and put it to our attention in regards to a grievance. We probably would have made an adjustment if it was brought to our attention.
>
> Q. Okay.
>
> A. Center of New England Urgent Care and North Providence Urgent Care generate their own payroll checks, and if they do a like job we usually pay them out of the facility that they work. But, again, if they exceed a 40-hour work week and they're scheduled for those 40 hours, dependent if they work in corporation A or corporation B, **they are going to be paid overtime if it's greater than 40 hours.**
>
> I'm sure that if this was a scheduled work hour and she had taken out her times for her lunches and she had punched in and punched out accordingly, **she should have been paid for the extra 4 and a half hours**. And if she didn't get paid for the four and a half hours a grievance should have been brought to the payroll department, administrator, manager, supervisor, **or myself to make sure the correction would be made**.
>
> And if it wasn't brought to my attention, you know, it would be no way of correcting that unfortunately. . . . I mean, sure, there's human error as well – **but, I mean, if they're paid from two separate corporations in a kind job they should not have straight time above 40 hours, that's not my rule.**
>
> See Exhibit A – Dr. Farina deposition transcript at pgs. 107-109.

This testimony shows human errors in the payroll reporting system with four (4) different companies utilizing common and shared employees. More importantly, the testimony shows no willfulness on the part of Dr. Farina, his companies or Mrs. DelSignore. The one person who financially benefits from the medical facilities is the sole shareholder, Dr. Farina. He emphatically testified that the employee being discussed in this part of his deposition (Tracy) should not have been paid straight time for the extra 4.5 hours. He explicitly stated that if the same employee is paid from two different corporations in the same week and exceeded 40 hours between the two (2) companies, the employee should be paid overtime and that is his rule and policy.

This testimony does not smack of an employer who is acting willfully to deprive his employees of benefits accruing under the FLSA. To the contrary, Dr. Farina's interrogatory answers which were attached as part of the plaintiff's motion for partial summary judgment, establish that Dr. Farina was not a renegade employer in dereliction of federal labor laws but instead was a fastidious employer who established rather lengthy policies and procedures in order to operate his four (4) separate but interrelated medical facilities.[10] Those policies included the requirement that all employees take a lunch break. In interrogatory response number 6(b): Dr. Farina stated under oath:

> (b) I drafted the policies and procedures for the companies and its employees to follow. As I stated above, the employees are given the opportunity to self-direct and take their required breaks. **Employees are not permitted to forfeit or not take a lunch break.** All employees are asked to rotate their breaks to allow the functions of the office and to assist their fellow coworkers to accommodate such break times. As the medical director of the facilities and with the responsibility of the medical care of my

[10] There is no doubt—and defendants have stipulated during discovery to avoid an extra layer of discovery—that the defendant corporate entities constitute an enterprise covered by the FLSA as noted by plaintiff in his motion. On this score, plaintiff and defendants agree.

> patients, I do not personally check in with the employees to determine if everyone has taken a lunch break. **<u>I do see employees taking lunch. The employees know the company's policy that they must take the required lunch break when working the requisite number of hours. The employees are also directed to take breaks by their supervisors.</u>**
>
> <u>See</u> [Doc. 21-3 at pg. 5].

Dr. Farina continued on in explaining his company's policy that every employee who works the requisite number of hours must take a lunch break by adding as part of his interrogatory answers:

> **<u>Response No. 6 :</u>**
>
> (a) **<u>Every employee is required to take a thirty minute lunch break if their workday exceeds a 6 hour shift.</u>** The employees are given the opportunity to self-direct and take their required breaks. **<u>Employees are not permitted to forfeit or not take a lunch break</u>.** All employees are asked to rotate their breaks to allow the functions of the office and to assist their fellow coworkers to accommodate such break times. **<u>Employees are also directed to take breaks by their supervisors</u>**. **<u>Employees have historically not punched out when taking their required lunch break</u>.** It is important to note that all employees at the inception of hire are informed of the policies regarding strict adherence to their scheduled work shift and not to alter such without the direct approval of management. All employees are also aware of the policy to document such worktime through an employee time keeping program maintained by the companies; **<u>but there are instances where said employees have not properly recorded their work time</u>.** Bookkeeping reviews daily time sheets to determine if employees have punched out properly, or failed to do so when required. It is my understanding that in such circumstances where employees have failed to properly record their work time, the appropriate deduction is made. **<u>As agreed upon in writing by all new hires, all employees are expected and encouraged and reminded by management to punch in and out at the start of and the close of their shift as well for all required breaks.</u>**
>
> <u>See</u> [Doc. 21-3 at pg. 4].

The owner of the defendant companies has testified that there is a historic problem with employees not punching out when taking lunch. While the Secretary wants to gloss over the systemic problem of employees punching out for lunch breaks at the defendant companies by generally accusing the defendants of stealing time from their employees, a real problem exists at the companies. For the most part, employees have not punched out as required for their mandated lunch break despite the instituted company policy to do so. The failure to punch out resulted in an exaggerated work time reflected on the time card details.[11] To adjust the payroll to properly reflect actual hours worked, the defendants, in turn, simply subtracted thirty (30) minutes from the inaccurate time shown on the time card detail and then reported the correct time to payroll.

This explanation behind the payroll deduction goes to rebut two (2) points raised by the Secretary in his motion. One, we do not have willful and flagrant conduct by the defendants. There is a justifiable basis for making the thirty (30) minute reductions since—although the policy was to punch out for lunch—most did not which required bookkeeping to adjust the records.[12] Secondarily, there is no evidence before the court tying which employees were deprived of a lunch break on a specific day and, assuming *arguendo* that no lunch was taken, the thirty (30) minute reduction was still applied.[13]

[11] These time card details represent the records generated by the company's time clock management system.

[12] There is no independent evidence from third party employees introduced by the Secretary that employees were contemporaneously deprived of a lunch break and deprived of being paid thirty minutes for work performed during the lunch break.

[13] This goes to support defendants' claim that liability has not been established as a matter of law on the claims raised in his motion for partial summary judgment.

III. Summary Judgment is not warranted on the alleged recordkeeping violations or the liquidated damages claim.

The Secretary also claims that he is entitled to judgment as a matter of law with respect to record keeping violations. Again, tying in the arguments made above in Section II in this memorandum of law, a substantial portion of the recordkeeping violations go to the thirty (30) minute reduction the defendant companies engaged in to address the systemic problem with employees not punching out for lunch. There was and is a good faith basis for those reductions. Employees have no right to be paid for work time not performed. If the reduction is justified in the first place, there cannot be a recordkeeping violation for the reduction.[14] Moreover, defendants are at a loss as to how there can be a record keeping violation when the defendant companies maintain a proper time clock management system **and it's the failure of the employees to punch out of that electronic system for lunch which allegedly causes the inaccurate recordkeeping!**

Yet another basis for the recordkeeping violation is the fact that defendants located a stray box of records during the course of the litigation **and produced the records.** According to the Secretary, this production serves as evidence of a violation because it was not produced during the 2017 administrative investigation. The box in question was located as part of the defendants' sweep of its offices to fully comply with discovery obligations in this case. The box contained a mix of time card detail records and other irrelevant records which the undersigned counsel had to remove before producing the box in question.[15]

---

[14] This memorandum is in response to a summary judgment motion. At a minimum, there is a question of fact as to whether the thirty (30) minute reductions were justified for each and every instance it was taken and for each and every one of the employees for which it was taken. This is yet another example why summary judgment is inappropriate in this case.

[15] See Exhibit B which consists of Brenda DelSignore's deposition testimony found at pages 71 to 84. This examination conducted by defense counsel clears up the confusion regarding the missing box and the complete lack of significance of the box being produced as part of this litigation proceeding.

For the same reasons, the Secretary has not established that he is entitled to liquidated damages at this stage of the proceeding. The court possesses the authority and discretion to outright deny or reduce liquidated damages—even if the inappropriate wage is paid—if the defendants had a subjective good faith and objective reasonable grounds that its actions or omissions did not violate the FLSA. Title 29 U.S.C. § 260. Defendants have put forth sufficient evidence to establish a genuine issue of material fact regarding the thirty (30) minute reduction for the employees' rampart failure to punch out for lunch. Other issues concerning recordkeeping and the companies' failure to pick up on an inadvertent mistake regarding potential overtime not paid to a shared employee who combined her time between two (2) companies in the same week are also issues for a trier of fact to decide whether a good faith basis exists for the error.[16]

IV. Mrs. DelSignore is not an employer for FLSA purposes.

Mrs. DelSignore disputes the label the Secretary seeks to impose upon her pursuant to the FLSA. This individual defendant is not an owner nor does she hold a financial interest in any of the medical facilities who have all been hauled into court on alleged FLSA violations. While labeled with the prestigious title "Practice Manager" of the medical facilities, Mrs. DelSignore is basically a utility person who engages in a variety of tasks for Dr. Farina and his four (4) companies. According to the deposition testimony of Dr. Farina, it was he who was responsible for and controlled everything. In response to the question asking him what was his role in supervising the employees of all four (4) facilities, he testified:

> I'm usually the medical director and I need to make sure that the patients are being cared for, so mine is ore of a clinical position, so to speak. Making sure that there's no quality care issues, making

[16] Dr. Farina did not skirt the issue and claim that the hours should not be combined in determining whether an employee was entitled to overtime pay. He testified that it was his rule that the employee who worked for more than one medical facility and their combined hours exceeded 40 hours, that employee should have been paid overtime.

> sure that there is no problems. **<u>I also am directly involved in human resources in regards to compliance with the patient hires and eligibility. I'm also involved in bookkeeping,</u>** I'm involved in billing, I'm involved in tax situations. I'm involved in maintenance of the facility, I'm involved in inventory requirements from a medical need, I'm involved in licensure of clinical staff, I'm involved in supervision of clinical staff.
>
> <u>See</u> Exhibit A at pgs. 31-32. (emphasis added).

After being further asked who did he supervise, Dr. Farina answered:

> I personally supervise the nine doctors that work for me. I personally supervise the medical assistants that work for me, **<u>I personally supervise management that works for me, I personally supervise Brenda DelSignore. I personally supervise bookkeeping and human resources,</u>** I personally supervise my legal, I personally supervise my accountant. I personally supervisor [supervise] billing.
>
> <u>See</u> Exhibit A at pg. 32. (emphasis added).

The evidence basically shows that Dr. Farina was in control of everything including Brenda DelSignore.[17] However, one thing that Mrs. DelSignore was not in charge of was the timekeeping process at each of the facilities. <u>See</u> Exhibit B at pg. 22. According to Mrs. DelSignore's testimony, the bookkeeper was in charge of the timekeeper process. <u>Id</u>. She further explained her role with timekeeping as follows:

> **<u>The only time that I would go on the time clock system would be if there was a lapse in any of our bookkeepers.</u>** Most of the time when a bookkeeper's leaving another bookkeeper was training so I didn't get involved.
>
> . . .
>
> **<u>What I was saying was that I didn't get involved with any of the time clocks, the punches or the payroll. The only time that I would ever get involved in that area is if a bookkeeper was not with us any longer and would have to train another bookkeeper.</u>**

[17] Defendants do not dispute that Dr. Farina is an employer under the FLSA.

**<u>But 99 percent of the time the bookkeeper that would be leaving would be training the new one coming in.</u>**

<u>See</u> Exhibit B at pgs. 23-24.

Mrs. DelSignore did testify later on and as part of her discovery responses that she did, at times, implement Dr. Farina's policy subtracting time for lunches taken which were not punched out as well as not authorizing payment for hours which exceeded the forty hour work week (which were not authorized by management). Again, Mrs. DelSignore gained no financial incentive in partaking in these tasks from time to time. She emphatically testified that "everybody took a lunch and it was in our policies and procedures for everyone to take a lunch". <u>See</u> Exhibit B at pg. 34.

Bottom up, on the Secretary's best day, there is a question of fact concerning whether Mrs. DelSignore is an employer subject to liability for which could prove to be hundreds of thousands of dollars in this case.[18]

V. <u>Conclusion</u>

There are genuine issues of material fact in dispute in most of the issues presented by the Secretary in his motion for partial summary judgment. Recognizing that the issue of damages is for a trier of fact, the Secretary wisely elected not to travel down that path as part of his motion. That said, the same issues which prevented the Secretary from seeking summary judgment on the issue of damages spill over into the questions of liability at issue in this case. This is not a case ripe for summary judgment or partial summary judgment. The lingering facts on the issue of liability are too intertwined with any damage calculation that might need to be made in this case.

[18] It would be an absolute Draconian measure to hold a mere employee with no ownership interest in the companies for substantial wages, potential liquidated damages and other statutory penalties in a case such as this one.

For all the foregoing reasons, the defendants respectfully request that plaintiff's motion for partial summary judgment be denied.

Defendants,
North Providence Primary Care Associates, Inc.
North Providence Urgent Care Inc.
Center of New England Primary Care Inc.
Center of New England Urgent Care Inc.
Dr. Anthony Farina, Jr. and
Brenda DelSignore

/s/ Michael J. Lepizzera, Jr.

Michael J. Lepizzera, Jr. (#4995)
Lepizzera & Laprocina Counsellors at Law, Ltd.
117 Metro Center Blvd. Suite 2001
Warwick, Rhode Island 02886
Tel: (401) 739-7397
Fax: (401) 384-6960
Email: MLepizzera@LepLap.com

CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Michael J. Lepizzera, Jr.

Michael J. Lepizzera, Jr. (#4995)